43228. LUTHER v. THE STATE.
(342 SE2d 316)

MARSHALL, Chief Justice.

Donald Robert Luther, indicted and tried for murder, appeals from his conviction of voluntary manslaughter, for which he was sentenced to 20 years' imprisonment.* We affirm.

Evidence was adduced at the trial to the following effect. Pursuant to notification on the afternoon of June 6, 1985, the Decatur County Sheriff's Department investigated a remote boat landing on Lake Seminole, where they found the body of the victim, Don Yarley, an insurance salesman, kneeling face-down with his head on a picnic bench. The victim's pants pockets were turned inside-out; his hands were tied behind him with surgical tape; he was shot in the back of the head; there were footprints in the sand between the victim's legs; there was no sign of any struggle; no weapon was found; insurance ledgers and books were open on the picnic table; and a Tareyton cigarette pack was lying near the body. The cause of death was attributed

---

[1] The parties did not waive findings and conclusions. See OCGA § 9-11-52.

* The crime occurred on June 6, 1985, and the defendant was convicted on November 12, 1985. An out-of-time appeal was granted on December 31, 1985. Notice of appeal was filed in the trial court on January 7, 1986. The transcript was certified by the court reporter on February 7, 1986. The record was docketed in this court on February 25, 1986. The appeal was submitted for decision without oral arguments on April 11, 1986.

to two small-caliber bullet wounds in the back of the head, with a maximum muzzle-to-wound distance of two inches.

A handwritten "will," signed by the victim and found in the glove compartment of his vehicle, included several bequests to family members from insurance proceeds, and a $10,000 bequest to the appellant. On the morning of the homicide, the appellant had been seen at Miles Bait & Tackle Store with the victim, who had "a pretty good size" roll of bills in his possession.

The appellant, questioned by investigators, related to them a discussion he had had with the victim about how to make a "pipe bomb," then he voluntarily led them to the victim's residence and pointed out to them the components of the homemade "pipe bomb," i.e., gunpowder, nails, drill, drill bit, and lead pipe. At this time, the officers observed a discarded Tareyton cigarette pack, uniquely folded, similar to the one found at the crime scene. The appellant was the only person developed in the investigation who smoked Tareyton cigarettes.

When confronted by some of the evidence developed in the investigation, the appellant gave a complete, taped statement, in which he admitted shooting the victim and hiding the victim's money in several immobilized cars in his yard. He claimed that Yarley had planned his own demise, and had asked the appellant to help him make it look like an armed robbery. He stated that he did not really want to kill Yarley, but that Yarley had told him that there was a man in the bushes who would kill him if he did not. The appellant never saw anyone, or heard any one speak, but claimed to have seen the bushes move. No evidence was ever produced to corroborate the existence of the purported man in the bushes. The appellant then fled the scene in a boat (a footprint found in a boat appeared identical to the one found next to the victim's body), threw the homicide weapon in the lake, threw his shoes away, and hid the money at his residence. He later led investigating officers to the money, which was recovered, and one shoe, which was found.

1. The appellant attacks the constitutionality of OCGA § 16-3-26: "A person is not guilty of a crime, *except murder*, if the act upon which the supposed criminal liability is based is performed under such coercion that the person reasonably believes that performing the act is the only way to prevent his imminent death or great bodily injury." (Emphasis supplied.) He contends that the trial court erred in charging the jury on this section as written because it arbitrarily excludes coercion as an affirmative defense to the charge of murder and violates his right to equal protection of the law.

"It is an established rule in Georgia that all presumptions are in favor of the constitutionality of an [A]ct of the legislature. *Kirton v. Biggers*, 232 Ga. 223 (206 SE2d 33) (1974); *Mayes v. Daniel*, 186 Ga.

345 (198 SE 535) (1938)." *Culpepper v. Veal*, 246 Ga. 563, 564 (272 SE2d 253) (1980). "The Criminal Law Study Committee's Notes on the enactment of [OCGA § 16-3-26] explain the addition to the former law, Code Ann. §§ 26-401 [OCGA § 16-1-3], 402, removing the defense of coercion to a charge of murder, as adopting the common[-]law approach that one should die himself before killing an innocent victim." *Thomas v. State*, 246 Ga. 484, 486 (272 SE2d 68) (1980). This court has followed prevailing common-law principles even when the statutory law has not specifically incorporated such principles. See *Culpepper v. Veal*, supra, p. 564 and cits.

Contrary to the appellant's argument, the distinction between murder and other offenses is constitutionally permissive. "The denomination of certain crimes as capital felonies is an expression of our society's view that these crimes are more heinous than other classes of crimes, with murder being the most heinous of all capital felonies. It follows that defendants convicted of capital felonies, particularly murder, should be and are treated differently than defendants convicted of non-capital felonies and misdemeanors." *Hardin v. State*, 251 Ga. 533, 534 (307 SE2d 669) (1983). This court has held that more stringent procedural limitations may be applied to capital felonies than other crimes without offending the Equal Protection Clause of the Constitution. See *Browning v. State*, 254 Ga. 478 (2a) (330 SE2d 879) (1985) (appeal bond for the offenses of murder, rape, armed robbery, kidnapping, and aircraft hijacking); *Moore v. State*, 233 Ga. 861 (1a) (213 SE2d 829) (1975) (imposition of the death penalty).

To include the offense of murder among those to which coercion would be a defense, would constitute a rejection of our common-law heritage. There was no equal-protection violation.

2. The appellant also contends that the charge on § 16-3-26 as written denied his right to due process of law, because it denied him his sole defense of justification by coercion, lessened the state's burden of proof of the offense, and denied him his due-process right of having the jury weigh the evidence relating to the victim's participation in his own death to determine whether he came within the protected category of "innocent victim."

The fact that the appellant shot the victim in the back of the head twice is not in dispute, and there was evidence that the victim was a willing participant in his own death. The other attendant circumstances of the slaying are subject to speculation.

The appellant — a drifter with a long history of drug abuse — contends that he was forced to shoot a man who was on his knees with his hands tied tightly behind his back. This contended coercion — from a person the appellant never saw, or heard say anything — is uncorroborated. The evidence showed that the appellant voluntarily

met the victim at an isolated, prearranged boat landing, traveling by boat so as to be undetected; that he did not flee from the situation before committing the offense, despite the opportunity presented when the victim was on his knees with his hands bound behind him; that, by his own admission, he had a cigarette hanging out of his mouth after shooting the victim; that he threw the homicide weapon in the lake, but continued to secrete the $527 in cash in different locations at his residence; that he stood to gain $10,000 with the completion of his crime; and that he never reported the incident to the authorities until after he became a suspect and was confronted with the evidence gathered against him.

In spite of the fact that the trial court charged the jury on the offenses of murder, voluntary manslaughter, and involuntary manslaughter, as well as the law of coercion — the appellant was indicted and tried for murder, and there was evidence which might have authorized a conviction of murder. The charge did not constitute a due-process violation. If anything, it favored the appellant, by giving the jury the opportunity to convict the appellant of a lesser charge, which it did.

3. Finally, Luther also challenges the sufficiency of the evidence. We have, however, reviewed the evidence in a light most favorable to the verdict, and find that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 29, 1986.

*Richard A. Epps*, for appellant.

*J. Brown Moseley, District Attorney, Michael J. Bowers, Attorney General*, for appellee.