## 45812. KINSMAN v. THE STATE.
### (376 SE2d 845)

BELL, Justice.

Ronald Leroy Kinsman was convicted by a jury in Muscogee County of malice murder, armed robbery and theft by taking. He was sentenced to death.[1]

Bruce Keeter was an assistant manager of a Hardee's fast-food restaurant in Columbus. He was last seen alive at 1:20 a.m. on September 14, 1986, at the restaurant, where he remained by himself to prepare the cash registers for the next business day. He was reported missing by his mother when he failed to return home, and his body was discovered inside the restaurant shortly after 6:00 a.m. Almost $400 was missing from the safe. The victim's car was found abandoned next to an interstate highway, with its passenger-side window broken out.

On December 4, 1986, Columbus police talked to Randy Hubbard, a friend of Kinsman. Hubbard stated to the police that Kinsman had admitted killing a man at a Hardee's restaurant that Kinsman and two others had robbed of $400. At the request of the police, Hubbard telephoned Kinsman. This conversation was recorded. As the two discussed committing another robbery, Kinsman made incriminating references to the robbery of the Hardee's and the murder of Keeter.

---

[1] The crime was committed September 14, 1986. Kinsman was arrested on December 5, 1986. He was indicted December 30, 1986, and tried April 13 through April 18, 1987. He was sentenced to death on April 18, 1987. A motion for new trial was filed May 22, 1987. The motion was denied May 4, 1988. The case was docketed in this court on May 16, 1988 and was argued orally on September 13, 1988.

Kinsman and the other two — Patterson and Morgan — were arrested. Kinsman was interrogated, and, after learning that Morgan had confessed, admitted being a party to the murder and armed robbery. However, he now claimed that Patterson had killed the victim. He admitted driving the victim's car to where it was abandoned, explaining that he had broken the window to retrieve the keys he had left in the car, because he remembered his fingerprints were on them.

1. The evidence supports the conviction. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. "Death qualification" of prospective jurors is not improper, and the trial court's death-qualification rulings were "within the deference due the trial judge's determination." *Jefferson v. State*, 256 Ga. 821, 824 (353 SE2d 468) (1987). Kinsman's voir dire examination was not improperly restricted. *Curry v. State*, 255 Ga. 215 (2) (b) (336 SE2d 762) (1985).

3. The trial court's reference to "guilt or innocence" (see *Childs v. State*, 257 Ga. 243 (8) (357 SE2d 48) (1987)) could not have misled the jury where clear instructions were given that the defendant was presumed innocent and that unless satisfied of the defendant's guilt beyond a reasonable doubt, the jury should find the defendant "not guilty."

4. The court did not err by admitting photographs of the murder victim. *Hicks v. State*, 256 Ga. 715 (13) (352 SE2d 762) (1987).

5. A paperweight recovered from the apartment shared by Kinsman and co-defendant Morgan was identified by its owner as one stolen from his residence along with a .38 caliber pistol that was the likely murder weapon in this case. Contrary to the defendant's contention, the identification of the paperweight was not conjectural, and the court did not err by admitting it in evidence.

6. Kinsman testified on direct examination that Patterson forced him to accompany him. Kinsman said he was afraid of him because Patterson had "killed before" and was "capable of doing anything." He testified that Patterson killed the victim. Kinsman stated that, as for himself, he did not "have the heart to do nothing like that. . . . I don't even shoot deer, and that's supposed to be a game."

In rebuttal, the state proved that ten years previously Kinsman had voluntarily accompanied Patterson in the commission of murder and armed robbery, and that Kinsman had admitted shooting "at" the victim. There, as here, Kinsman shared in the proceeds of the robbery.

Evidence concerning the previous crime was properly admitted. *Frazier v. State*, 257 Ga. 690 (16) (362 SE2d 351) (1987).

7. Kinsman contends his cross-examination of state's witness Randy Hubbard was impermissibly restricted in two respects.

(a) Hubbard testified on direct examination that he had talked to

"my attorney" before trial. On cross-examination, Kinsman asked if this attorney was "the former district attorney that used to put you in jail?" The state objected on the ground that the defendant's question was "an improper impeachment, if that's what that's supposed to be." The defendant made no attempt to explain the purpose or the relevance of the question, and the court did not err by sustaining the state's objection.

(b) Hubbard had several criminal charges pending against him. The trial court allowed Kinsman to question Hubbard about these charges, but when Hubbard denied that one of the charges was pending, the court refused to allow the defendant to offer in evidence a document allegedly proving the pendency of the charge. The court reasoned that a witness may be impeached only by proof of a conviction for a crime involving moral turpitude, and not by proof merely that he has been arrested. See, e.g., *Strickland v. State*, 166 Ga. App. 702 (305 SE2d 434) (1983).

It is true that an attempt to impeach a witness on the ground that he is a criminal must be supported by a conviction; that he merely has been charged with a crime is no proof that he is a criminal. But that is not to say that *pending* criminal charges are not relevant. On the contrary, the partiality of a witness may be exposed by proof that he hopes to benefit in related cases from his cooperation with the prosecution in this case. Such partiality "is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' [Cit.]" *Hines v. State*, 249 Ga. 257, 260 (290 SE2d 911) (1982) (quoting *Davis v. Alaska*, 415 U. S. 308, 316 (94 SC 1105, 39 LE2d 347) (1974)).

Here, the trial court allowed the defendant to cross-examine Hubbard about his pending criminal charges, but, applying the rule discussed in *Strickland*, supra, 166 Ga. App., in the wrong context, the court refused to allow the defendant to prove that Hubbard incorrectly denied one of the charges.[2] Cf. *Jones v. State*, 257 Ga. 753 (1) (a) (363 SE2d 529) (1988). However, Kinsman was not otherwise limited in his cross-examination about pending charges. Hubbard admitted that charges were pending against him and admitted that he had lied in the past and that he was "quite capable" of telling a lie. More-

---

[2] "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination [about possible witness bias] based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U. S. 673, 679 (106 SC 1431, 89 LE2d 674) (1986). See *Lee v. State*, 258 Ga. 762 (6) (374 SE2d 199) (1988). We do not decide whether a limitation on the defendant's cross-examination of Hubbard would have been appropriate on any of these grounds, because the trial court relied on none of them. However, our opinion should not be read as holding that no limitations may be placed on the scope of cross-examination about this issue.

over, Hubbard did not deny the existence of the disputed charge. He claimed it had been disposed of and he had "paid" his "debt" on that charge. The jury's evaluation of Hubbard's credibility would not have been altered significantly if the defendant had been allowed to show the disputed charge was still pending.

In view of the foregoing, conjoined with the overall strength of the prosecution's case, we conclude that any error was harmless beyond a reasonable doubt. See *Delaware v. Van Arsdall*, 475 U. S. 673, 681-684 (106 SC 1431, 89 LE2d 674) (1986).

8. The trial court did not err by admitting over a hearsay objection out-of-court statements made by co-conspirator Morgan during the pendency of the conspiracy. *Castell v. State*, 250 Ga. 776 (1) (301 SE2d 234) (1983). We find no other instance in the trial where inadmissible hearsay was admitted over the defendant's objection, and, hence, find no denial of his right to confrontation of witnesses.

9. The trial court did not err by allowing a state's witness to testify, even though the witness was not on the list furnished the defendant pursuant to OCGA § 17-7-110. The defendant made no motion to exclude the witness, and the court granted the defendant's request to interview the witness before his testimony. The testimony of the witness was very brief. *Simmons v. State*, 249 Ga. 860 (4) (295 SE2d 84) (1982). There is no merit to the defendant's present contention that he was denied effective assistance of counsel by the court's ruling.

10. That Kinsman killed an innocent victim for money was relevant to the issue of malice. See OCGA § 16-5-1. The prosecutor was not guilty of misconduct by arguing to the jury that the victim was just "doing his job" and "trying to earn a living" and was "killed for no other reason than money . . . and not all that much money at that." Cf. *Holiday v. State*, 258 Ga. 393 (11) (f) (369 SE2d 241) (1988).

11. The defendant did not object at trial to the prosecutor's closing argument and, having reviewed the complaints he now makes on appeal, we conclude the prosecutor's arguments "did not result in the sentence of death being imposed under the influence of passion, prejudice, or any other arbitrary factor." *Davis v. State*, 255 Ga. 598, 611 (17) (340 SE2d 869) (1986). See also *Hicks v. State*, 256 Ga. 715 (23) (352 SE2d 762) (1987).

No reversible error occurred during the prosecutor's opening statement. Referring to "applicable law" does not, as the defendant contends, violate the proscription against "reading law" not covered by the court's charge. *Conklin v. State*, 254 Ga. 558, 570-71 (331 SE2d 532) (1985).

There is no merit to Kinsman's contention that certain portions of the state's cross-examination of him amounted to prosecutorial misconduct. See *Skipper v. State*, 257 Ga. 802 (3) (364 SE2d 835)

(1988).

12. The tape-recorded conversation between the defendant and Hubbard corroborated Hubbard's testimony, and its relevance justified its admission in evidence despite a brief reference by Hubbard to cocaine. References by both persons to their homosexuality merely informed the jury of something it had already been made aware of.

13. The rule which prohibits an expression or intimation of opinion by the trial court "as to what has or has not been proved," OCGA § 17-8-57,[3] "does not generally extend to colloquies between the judge and counsel regarding the admissibility of evidence. [Cits.]" *Mathis v. State*, 171 Ga. App. 620 (1) (320 SE2d 861) (1984). The comment at issue in Kinsman's 17th enumeration of error falls into the permitted category, and no violation occurred.

14. The court's instructions on mitigating circumstances were adequate. *Ross v. State*, 254 Ga. 22 (6) (326 SE2d 194) (1985). See also *Peek v. Kemp*, 784 F2d 1479 (Section II) (11th Cir. 1986). The court did not, as Kinsman contends, prevent him from offering evidence in mitigation. Cf. *Parker v. State*, 256 Ga. 543 (9) (350 SE2d 570) (1986).

15. The jury found the existence of two statutory aggravating circumstances:

1. The offense of murder was committed while the offender was engaged in the commission of another capital felony, to wit: armed robbery.

2. The offense of murder was committed by a person with a prior record of conviction for a capital felony, to wit: murder.

Record, p. 80. See OCGA § 17-10-30 (b) (1) ; (b) (2).

The evidence supports the jury's finding. OCGA § 17-10-35 (c) (2). There is no merit to Kinsman's argument that his 1976 murder conviction was too old to use in aggravation. As we stated in *Cook v. State*, 255 Ga. 565 (13) (b) (340 SE2d 843) (1986):

The age of a conviction is a matter which the defense may argue in mitigation, but it is no ground for the exclusion of the evidence.

Id. at 576-77. It should be noted that, unlike Cook, Kinsman had not long been free when he committed the crime in this case.

Kinsman further argues that a death sentence based on the § (b) (1) aggravating circumstance (prior record of conviction for a capital

---

[3] Formerly OCGA § 17-8-55. Redesignated as § 17-8-57 by Ga. Laws, 1985, p. 1190, § 1.

felony) is "offensive to both logic and conscience" because the defendant is being punished "on the basis of [his] status."

This argument essentially is the inverse of that made in *Ford v. State*, 257 Ga. 461 (1) (360 SE2d 258) (1987). There, the defendant complained of statutory aggravating circumstances that were based upon the circumstances of the offense; here the defendant complains of an aggravating circumstance based upon his character. We reiterate:

> The factors normally considered in sentencing are (1) the character of the defendant, including his previous criminal activity, if any, and (2) the circumstances of the crime on trial. [Cit.]

*Ford v. State*, supra at 463. Either factor can justify a death sentence.

Kinsman was eligible for a death sentence not only because this murder was committed during the course of an armed robbery, OCGA § 17-10-30 (b) (2), but also because it was his second murder, OCGA § 17-10-30 (b) (1). The § (b) (1) aggravating circumstance narrows the class of persons eligible for a death sentence and justifies the imposition of a more severe sentence. *Zant v. Stephens*, 462 U. S. 862 (103 SC 2733, 77 LE2d 235) (1983). The jury's § (b) (1) finding was proper.

16. The trial court did not err by refusing to deliver Kinsman's requested charge on coercion at the guilt phase of the trial. *Luther v. State*, 255 Ga. 706 (1) (342 SE2d 316) (1986). Nor did the court err by failing to instruct the jury as to any lesser-included offenses of murder or armed robbery where the defendant did not request such instructions.

17. The voir dire examination of prospective juror Sanchez was sufficient. See *Blankenship v. State*, 258 Ga. 43 (6) (365 SE2d 265) (1988). That the prospective juror mentioned the possibility of parole during her examination did not mandate a jury instruction on this issue absent any request for such an instruction. See *Quick v. State*, 256 Ga. 780, 787 (fn. 3) (353 SE2d 497) (1987).

18. The sentencing verdict form was not inadequate for failure to list possible mitigating circumstances. *Smith v. State*, 249 Ga. 228 (2) (290 SE2d 43) (1982).

19. The defendant's armed robbery conviction does not merge into his conviction for malice murder. *Windelberg v. State*, 257 Ga. 289 (2) (357 SE2d 583) (1987); *White v. State*, 255 Ga. 210 (10) (336 SE2d 777) (1985).

20. Kinsman argues his death sentence may not stand because there is no finding that he killed, intended to kill, or attempted to kill. See *Enmund v. Florida*, 458 U. S. 782 (102 SC 3368, 73 LE2d 1140) (1982). In fact, the trial court instructed the jury:

I further charge you that the sentence of death shall not, and cannot, be imposed unless you find beyond a reasonable doubt that the defendant either, one, committed the murder himself; two, he, himself, attempted to kill the victim; or, three, intended that deadly force be used by another to accomplish the criminal enterprise.

Transcript at p. 1512.

Pretermitting the necessity of such a charge where the defendant, as here, has been convicted of malice murder, the sentencing phase instructions fully satisfy *Enmund. Davis v. State*, 255 Ga. 598 (18) (340 SE2d 869) (1986).

21. Kinsman's 30th enumeration of error is without merit. *McCleskey v. Kemp*, 481 U. S. 279 (107 SC 1756, 95 LE2d 262) (1987).

22. In his 31st enumeration of error, Kinsman asks us to review certain issues that allegedly were timely raised at trial even though they are neither enumerated as error nor argued on appeal. We have reviewed the record pursuant to Rule IV (B) (2) of the Unified Appeal Procedure. Ga. Court & Bar Rules, p. 9-15. We do not find that Kinsman's sentence was imposed as the result of passion, prejudice or other arbitrary factor. OCGA § 17-10-35 (c) (1). See *Hance v. Kemp*, 258 Ga. 649 (4) (373 SE2d 184) (1988); *Julius v. Johnson*, 840 F2d 1533, 1545-46 (V) (11th Cir. 1988).

23. The death sentence is neither excessive nor disproportionate in this case. Compare *Beck v. State*, 255 Ga. 483 (6) (340 SE2d 9) (1986); *Blanks v. State*, 254 Ga. 420 (10) (330 SE2d 575) (1985). The similar cases listed in the Appendix support the imposition of a death sentence in this case.

*Judgment affirmed. All the Justices concur.*

### APPENDIX.

*Moon v. State*, 258 Ga. 748 (375 SE2d 442) (1988); *Lee v. State*, 258 Ga. 82 (365 SE2d 99) (1988); *Harrison v. State*, 257 Ga. 528 (361 SE2d 149) (1987); *Childs v. State*; 257 Ga. 243 (357 SE2d 48) (1987); *Hicks v. State*, 256 Ga. 715 (352 SE2d 762) (1987); *Cook v. State*, 255 Ga. 565 (340 SE2d 843) (1986); *Beck v. State*, 255 Ga. 483 (340 SE2d 9) (1986); *Walker v. State*, 254 Ga. 149 (327 SE2d 475) (1985); *Ingram v. State*, 253 Ga. 622 (323 SE2d 801) (1984); *Spivey v. State*, 253 Ga. 187 (319 SE2d 420) (1984); *Roberts v. State*, 252 Ga. 227 (314 SE2d 83) (1984); *Mincey v. State*, 251 Ga. 255 (304 SE2d 882) (1983); *Jones v. State*, 249 Ga. 605 (293 SE2d 708) (1982); *Berryhill v. State*, 249 Ga. 442 (291 SE2d 685) (1982); *Solomon v. State*, 247 Ga. 27 (277 SE2d 1) (1981); *Dick v. State*, 246 Ga. 697 (273 SE2d 124) (1980); *Tucker v. State*, 245 Ga. 68 (263 SE2d 109) (1980); *Jones v. State*,

243 Ga. 820 (256 SE2d 907) (1979); *Amadeo v. State*, 243 Ga. 627 (255 SE2d 718) (1979); *Corn v. State*, 240 Ga. 130 (240 SE2d 694) (1977); *Young v. State*, 237 Ga. 852 (230 SE2d 287) (1976); *Stephens v. State*, 237 Ga. 259 (227 SE2d 261) (1976); *Spencer v. State*, 236 Ga. 697 (224 SE2d 910) (1976); *Pulliam v. State*, 236 Ga. 460 (224 SE2d 8) (1976); *Dobbs v. State*, 236 Ga. 427 (224 SE2d 3) (1976); *Goodwin v. State*, 236 Ga. 339 (223 SE2d 703) (1976); *Mitchell v. State*, 234 Ga. 160 (214 SE2d 900) (1975); *Moore v. State*, 233 Ga. 861 (213 SE2d 829) (1975).

DECIDED FEBRUARY 15, 1989 —
RECONSIDERATION DENIED MARCH 29, 1989.

*H. Haywood Turner III*, for appellant.

*William J. Smith, District Attorney, J. Gray Conger, Assistant District Attorney, Michael J. Bowers, Attorney General, Paula K. Smith, Assistant Attorney General*, for appellee.