S95P0108. CROWE v. THE STATE.
(458 SE2d 799)

CARLEY, Justice.

After appellant Samuel David Crowe was indicted for the malice murder of Joe Pala and for armed robbery, the State filed notice of its intent to seek the death penalty for the murder. Crowe subsequently offered to plead guilty as to the murder and to enter a guilty plea pursuant to *North Carolina v. Alford*, 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970) as to the armed robbery. The trial court accepted the pleas and the case proceeded to a jury sentencing trial for the murder. The jury returned a verdict imposing the death sentence, finding three aggravating circumstances: Crowe committed the murder in the course of another capital felony, armed robbery, OCGA § 17-10-30 (b) (2); he committed the murder for the purpose of receiv-

ing money, OCGA § 17-10-30 (b) (4); and, the murder was outrageously and wantonly vile, horrible or inhuman in that it involved depravity of mind and an aggravated battery, OCGA § 17-10-30 (b) (7). When the trial court entered judgments of conviction on the guilty pleas and sentences of death for the murder and of life imprisonment for the armed robbery, Crowe filed a direct appeal to this Court. Thereafter, Crowe filed in the trial court an extraordinary motion for new trial and, when that motion was denied, he filed another direct appeal from that ruling. Pursuant to this Court's order, the two cases have been consolidated for appellate disposition in this single opinion.[1]

### General Grounds

1. The evidence presented at the sentencing trial authorized the jury to find the following:

The victim was a manager at Wickes Lumber Company in Douglasville, Georgia. Crowe was a former manager trainee at Wickes and his wife was a current Wickes employee. Crowe was acquainted with the victim and with the procedure for closing the store each evening. Crowe was experiencing financial difficulties and, on the afternoon before the murder, he planned to rob Wickes to obtain money to pay his debts. While the victim was closing the store for the evening, Crowe knocked at the door of the store and was permitted to enter. Crowe then engaged the victim in conversation. While the victim's back was turned, Crowe shot him, piercing his lung and causing him to bleed to death. Before his death, however, the victim attempted to escape and Crowe shot at him twice more but missed. Crowe then hit the victim several times with a paint can and poured paint over his face. Believing the victim to be clinging to life, Crowe beat in the victim's skull with a crowbar and then stole $1,160.30 from the store.

The following day, after the victim's body was found, police

---

[1] The crimes occurred on March 2, 1988. Crowe was indicted on March 8, 1988. On September 22, 1988, the State filed its notice of intent to seek the death penalty. Voir dire commenced on November 8, 1989, and the trial of the case began on November 14, 1989. The jury returned its verdict on November 18, 1989, and the trial court sentenced Crowe on November 20, 1989. Crowe filed his notice of appeal on December 8, 1989. Thereafter, Crowe filed an extraordinary motion for a new trial on April 16, 1990. The trial court refused to hold a hearing on the motion and dismissed the motion on April 20, 1990. Crowe filed a notice of appeal of that ruling on June 1, 1990. This court remanded the case to the trial court on July 5, 1990, retaining jurisdiction, pursuant to Rule 4 (B) (1) of the Unified Appeal Procedure, ordering a hearing solely on the issues Crowe attempted to raise in his extraordinary motion for new trial. The trial court denied Crowe's extraordinary motion for new trial on May 13, 1994. On May 26, 1994, Crowe filed his notice of appeal of the denial of the extraordinary motion. On October 5, 1994, this court consolidated Crowe's direct appeal and appeal of the order denying the extraordinary motion for new trial. The case was orally argued on January 20, 1995.

learned that a car matching the description of that belonging to Crowe's wife was seen at Wickes at the approximate time of the murder. Officers questioned Crowe's wife and learned that Crowe had driven her car on the evening of the murder and that, upon returning home, he had uncharacteristically undressed in the basement, claiming that he had thrown up on himself and that he would discard his clothes. Crowe's wife also informed the police that she owned a .44 caliber handgun. A .44 caliber lead bullet was recovered from the scene. Police learned from a Wickes employee that, one week before the murder, Crowe asked for a loan in the amount of $1,500 and that he seemed desperate for money. Upon searching Crowe's wife's car, police discovered paint similar to that found on the victim. Thereafter, police searched Crowe's home and car, finding the murder weapon, a paint can, a crowbar, the victim's keys, and Crowe's clothes stained with blood and paint. Among the clothes was a pair of Crowe's tennis shoes with tread matching paint tracks at the scene.

Following his arrest the day after the murder, Crowe gave two consistent, tape-recorded statements to the sheriff. In those two statements, he admitted that he killed the victim and that he did so to obtain money. Six months later, however, Crowe moved to suppress his two earlier statements and then claimed at the hearing on that motion that he did not kill the victim, but that he arrived at the scene after the victim was already dead and that he took the money and several other pieces of evidence. He also testified at the suppression hearing that he had originally confessed due to a mistaken belief that his wife had been charged with the murder. Approximately one year after his arrest, Crowe contacted the sheriff and gave yet a third, videotaped statement in which he confessed to killing the victim during an argument and thereafter taking the money to make it appear that the victim had been killed during a robbery.

Although Crowe's guilty pleas render the general grounds moot as to his guilt of the murder and armed robbery, we nevertheless find that this evidence would be sufficient to enable any rational trier of fact to find him guilty of those crimes beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). With regard to the death sentence imposed for the murder, this evidence also was sufficient to authorize the jury's finding of the three aggravating circumstances.

### Guilty Pleas

2. Before Crowe pled guilty, he made two telephone calls to the trial judge. He urges that the trial judge impermissibly interfered with his attorney-client relationship by accepting these telephone calls and then erred by failing immediately to disclose the two ex

parte contacts to Crowe's counsel.

Crowe himself initiated the contacts. The trial judge testified in the hearing on the extraordinary motion for new trial that, in the first call, Crowe indicated he had problems with his counsel but was generally satisfied, that Crowe did not state the nature of the problems, and that the trial judge suggested that Crowe confer with his counsel. In court the following day, Crowe stated for the record that he was pleased with his representation and, based upon Crowe's telephone conversation, it certainly was not inappropriate for the trial judge to accept this statement without any further inquiry. With regard to the second telephone call, the trial judge testified that Crowe merely asked about the date of a hearing. The trial judge disclosed both contacts to Crowe's counsel within days after Crowe had called. Crowe may not complain now of his own earlier failure to inform his counsel of his contacts with the trial judge and he has not shown that he was in any way prejudiced by the timing of the trial court's disclosure.

3. Crowe urges that the trial court erred by accepting the guilty pleas without inquiring as to whether he had made a knowing and intelligent waiver of counsel. Such an inquiry was unnecessary, since Crowe never expressed any desire to undertake his own defense. Compare *Faretta v. California*, 422 U. S. 806 (95 SC 2525, 45 LE2d 562) (1975); *Clarke v. Zant*, 247 Ga. 194 (275 SE2d 49) (1981). The record reflects that, although Crowe may have entered his guilty pleas against the advice of his counsel, he did not waive the right to counsel and he was represented by counsel at all times both before and after pleading guilty. Crowe conferred with counsel several times during the plea hearing itself. Furthermore, after stating that he wished to plead guilty but before entering his pleas, Crowe told the trial court that he wanted his attorney to represent him in the sentencing trial.

Because Crowe never expressed a desire to defend himself pro se and, in fact, never proceeded pro se, the trial court was obligated to determine only whether Crowe's guilty pleas were knowingly and voluntarily made, not whether Crowe had waived the right to counsel and was capable of conducting his own trial. See *Stano v. Dugger*, 921 F2d 1125, 1144-1145, 1148 (11th Cir. 1991), cert. denied, 502 U. S. 835. The record supports the trial court's finding that there was a sufficient factual basis for entry of the pleas and that they were knowingly and voluntarily entered with an understanding of the nature of the charges, the consequences of the pleas and the rights waived thereby. See *Boykin v. Alabama*, 395 U. S. 238, 242-244 (89 SC 1709, 23 LE2d 274) (1969).

4. Crowe urges that the trial court erred in accepting his guilty plea to the armed robbery charge as a valid *Alford* guilty plea. "An individual accused of crime may voluntarily, knowingly, and understandably consent to the imposition of a . . . sentence even if he is

unwilling or unable to admit his participation in the acts constituting the crime." *North Carolina v. Alford*, supra at 37. Here, the trial court was presented with a sufficient factual basis for Crowe's plea and reasonably concluded that Crowe entered the plea knowingly and voluntarily. Crowe knew and remarked that the evidence against him, including his own confessions, was overwhelming. See *North Carolina v. Alford*, supra at 38. We need not address whether a plea coupled with a claim of innocence requires any additional inquiry into the conflict between the two. See *Minchey v. State*, 155 Ga. App. 632, 633 (271 SE2d 885) (1980). Crowe did not claim his innocence, but rather elected to remain silent on the advice of counsel.

Crowe further contends that the trial court erred in failing to warn him of the consequence that his guilty plea could have in his sentencing trial for the murder. Contrary to Crowe's contention, however, the trial court specifically advised him, and Crowe stated that he understood, that he was pleading guilty to an aggravating circumstance which could be used against him at the sentencing trial.

### Pre-sentencing

5. Crowe urges that the trial court erroneously failed to suppress his first two tape-recorded inculpatory statements. The trial court was authorized to find, from the evidence adduced at the suppression hearing, that the statements either had not been taken after Crowe's invocation of his right to counsel or that, if they had been, Crowe initiated them. *Hall v. State*, 255 Ga. 267 (336 SE2d 812) (1985). There was testimony that, after Crowe indicated a possible interest in consulting counsel, all questioning ceased and the police provided him with the telephone number of his counsel and the opportunity to call. However, Crowe then said, "Well maybe I just want to talk to him sometimes — I don't know if he's in his office or not. Turn on your tape recorder if you want a statement." Before being questioned, Crowe waived his *Miranda* rights and, in the tape-recorded statement, he acknowledged that it was being voluntarily made.

Contrary to Crowe's contention, the evidence also warranted a finding that his statements were not coerced by concern over the whereabouts of his young stepdaughter. There was testimony that Crowe readily agreed to have his stepdaughter taken to the home of an officer, who was a neighbor.

Crowe further contends that the statements were inadmissible fruits of his unconstitutional warrantless arrest. However,

[a] "warrantless arrest" is constitutionally valid if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers and of which

they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense.

*Callaway v. State,* 257 Ga. 12, 13-14 (354 SE2d 118) (1987). "Unless clearly erroneous, the trial court's ruling on disputed facts and credibility at a suppression hearing must be accepted on appeal." *Dean v. State,* 250 Ga. 77, 80 (295 SE2d 306) (1982). The trial court's finding that Crowe's warrantless arrest was constitutionally valid was not clearly erroneous.

6. Crowe contends that the trial court erred in failing to suppress tangible evidence seized in a warrantless search of his home and car.

Evidence adduced at the suppression hearing demonstrated that Crowe voluntarily consented to the searches, both orally and in writing, and that his wife also gave written consent to the search of the home. A valid consent obviates the need for a search warrant. *State v. McBride,* 261 Ga. 60, 62 (401 SE2d 484) (1991). The voluntariness of a consent to search is determined from the totality of the circumstances. *State v. McBride,* supra. At the time that he gave his consent, Crowe was twenty-seven years old, with at least three years of college education and above-average intelligence. He was advised of his rights. His consent to the search preceded any prolonged questioning. There is no evidence to indicate that Crowe was threatened or suffered any physical duress. On this evidence, the trial court was authorized to conclude that Crowe's will was not overcome by the mere presence of four officers or by any psychological distress relating to concerns about his wife or stepdaughter.

## Sentencing Trial

7. Crowe contends that the prosecution improperly withheld material, exculpatory, impeaching evidence consisting of reports of various officers who had been involved in his arrest. The prosecution gave Crowe open access to its file and permitted him to photocopy anything contained therein. Furthermore, Crowe concedes that his counsel reviewed the file and discovered the reports. *Brady v. Maryland,* 373 U. S. 83, 87 (83 SC 1194, 10 LE2d 215) (1963) does not mandate that the defendant in a criminal case be given copies of material, exculpatory evidence, but only that such evidence be made available to him. See *Willis v. State,* 263 Ga. 597, 599 (436 SE2d 204) (1993). Accordingly, this enumeration is without merit.

8. Because the prosecution's file was open to Crowe, there was no error in the trial court's denial of Crowe's request that an in camera inspection of that file be conducted or that the file be sealed. See *Reed v. State,* 249 Ga. 52, 55-56 (287 SE2d 205) (1982).

9. The trial court's refusal to strike several prospective jurors for cause is enumerated as error.

(a) Four potential jurors were challenged on the basis of their purported prejudice in favor of the imposition of the death penalty. A potential juror may be excused for cause when his views on the death penalty would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Adams v. Texas*, 448 U. S. 38, 45 (100 SC 2521, 65 LE2d 581) (1980). In determining whether this standard has been met as to each challenged juror, his voir dire must be considered as a whole. See *Spivey v. State*, 253 Ga. 187, 197, n. 3 (319 SE2d 420) (1984). Here, each of the four prospective jurors stated that he or she would follow the trial court's instructions and consider any mitigating evidence. Jurors who merely state a strong preference for a death sentence when presented with a hypothetical situation are not subject to being stricken for cause in a capital case. *Godfrey v. Francis*, 251 Ga. 652, 668 (308 SE2d 806) (1983). It is inappropriate to outline the case and then ask the juror what his or her vote would be. *Blankenship v. State*, 258 Ga. 43, 45 (365 SE2d 265) (1988). The trial court's determination that a juror is not disqualified is entitled to great deference. *Ledford v. State*, 264 Ga. 60, 64 (439 SE2d 917) (1994). Having considered the entirety of the voir dire of the four prospective jurors in this case, we conclude that the trial court was authorized to find that none was disqualified. See *Wainwright v. Witt*, 469 U. S. 412, 424-426 (105 SC 844, 83 LE2d 841) (1985); *Witherspoon v. Illinois*, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968); *Ledford v. State*, supra at 60.

(b) Another prospective juror had formerly worked for the sheriff's department and stated that he had respect for the sheriff's opinions. However, Crowe never moved to strike this prospective juror for cause at any time during the trial and the trial court did not err in failing to excuse him sua sponte. See *Childs v. State*, 257 Ga. 243, 249 (357 SE2d 48) (1987). Furthermore, unlike *Hutcheson v. State*, 246 Ga. 13, 14 (268 SE2d 643) (1980), the prospective juror in this case was a former, not a present, law enforcement officer. See *Potts v. State*, 261 Ga. 716, 722 (410 SE2d 89) (1991). The prospective juror stated that his former employment would not affect his ability to decide the case fairly and impartially.

(c) Crowe contends that the trial court erred by failing to strike for cause a prospective juror whose place of business had been peripherally involved in the investigation. However, this prospective juror only vaguely recalled that someone in law enforcement had inquired about a check. Such tangential involvement does not mandate the striking of a prospective juror for cause. See generally *Foster v. State*, 240 Ga. 858, 859 (242 SE2d 600) (1978). Moreover, this prospective juror was part of the panel from which alternates were selected and it

did not become necessary to use an alternate juror. Therefore, any error in the failure to strike him for cause would be moot. *Davis v. State*, 263 Ga. 5, 7 (426 SE2d 844) (1993).

10. Crowe contends that four prospective jurors were erroneously stricken for cause based upon their purported prejudice against imposition of the death penalty.

In urging that it was error to strike these four prospective jurors, Crowe relies only upon selected portions of their voir dire. However, when the entirety of their voir dire is considered, the trial court was authorized to find as follows: One of the prospective jurors indicated that, although she believed the death penalty may be appropriate in certain cases, she herself could not impose it; another indicated that she was sure that, if she were presented with a choice between a life sentence and a death sentence, she would choose life; another stated that she could not think of any situation in which she would vote for the death penalty and that her personal feelings would interfere with her ability to listen to the facts and follow the trial court's legal instructions; the last of the four stated that she was too tender-hearted ever to vote for the death penalty. From the entirety of voir dire, the trial court was authorized to find that each of the four prospective jurors was disqualified. The party seeking exclusion of a juror need not demonstrate bias with "unmistakable clarity." *Wainwright v. Witt*, supra at 424; *Ledford v. State*, supra at 63-64.

11. The trial court's admission into evidence of various photographs of the victim is enumerated as error.

Although Crowe had pled guilty to the murder, the photographs nevertheless were admissible in aggravation of his punishment. See *Potts v. State*, 259 Ga. 96, 103 (376 SE2d 851) (1989). Moreover, the photographs facilitated expert testimony as to the cause of death, assisted the jury in understanding the nature and location of the victim's wounds, and aided the jury in resolving contradictions between Crowe's statements and the physical evidence. See *Bramble v. State*, 263 Ga. 745, 746 (438 SE2d 619) (1994); *Leggett v. State*, 256 Ga. 274, 275 (347 SE2d 580) (1986). Two of the photographs had been taken during the autopsy. However, the only alteration in the state of the body was that paint which obscured the victim's injuries had been removed from the victim's face. Therefore, the photographs were not inadmissible. See *Brown v. State*, 250 Ga. 862, 867 (302 SE2d 347) (1983).

12. Although Crowe urges that the trial court abused its discretion in allowing the jury to visit the murder scene, the jury view was authorized as an aid in determining which of Crowe's conflicting statements was true and the trial court properly instructed the jury that the view was not evidence. See *Forney v. State*, 255 Ga. 316, 320 (338 SE2d 252) (1986).

13. Crowe contends that his pre-trial suppression hearing testimony was erroneously admitted as evidence in the sentencing trial.

Unlike *Simmons v. United States*, 390 U. S. 377 (88 SC 967, 19 LE2d 1247) (1968), Crowe's suppression hearing testimony was not admitted as evidence of his guilt, since he already had pled guilty and it was only a sentencing trial that was being conducted. See *Cervi v. State*, 248 Ga. 325, 330 (7) (282 SE2d 629) (1981). Crowe's suppression hearing testimony became relevant to the question of his sentence when his counsel asked the sheriff if he did not believe that Crowe "has a lot to live with here; pleading guilty to this, and telling you from day one that he's the one that did it?" In fact, however, Crowe had testified at the suppression hearing in the sheriff's presence that he did not murder the victim and that his first two statements to the contrary were lies. Having asked, in essence, whether the sheriff was not of the opinion that Crowe's admission of guilt "from day one" was a mitigating factor, Crowe cannot complain that it was error to allow the sheriff to give a truthful answer and explain his opinion. Once the door was opened by the questioning of the sheriff by Crowe's counsel, the trial court correctly allowed the State to introduce the entirety of his suppression hearing testimony into evidence at the sentencing trial.

14. Crowe urges that the trial court erred in allowing the prosecutor to introduce victim impact evidence. The record shows that no victim impact evidence was admitted, only rebuttal evidence. For example, one of Crowe's contentions was that the motive for the killing was not armed robbery, but the victim's threat to tell Crowe's wife that Crowe had a drug problem. Accordingly, the State was entitled to show that the victim had no tendency to interfere in the personal affairs of others. Another of Crowe's contentions was that the victim had agreed to lend him $1,500. Accordingly, the State was entitled to show that the victim did not carry large amounts of cash or earn a high salary.

15. Crowe urges that his third videotaped statement was erroneously admitted into evidence, because it was obtained by the sheriff's interference with his right to counsel and promise that he would receive a life sentence.

Neither before nor during the sentencing trial did Crowe object to the introduction of this statement. Instead, Crowe relied heavily upon the statement as mitigation evidence, arguing that it, rather than his prior statements, conveyed the truth about the murder. Crowe first raised the claim that his statement was inadmissible in his extraordinary motion for new trial, which was filed months after the sentencing trial. Such motions " 'are not favored, and a stricter rule is applied to an extraordinary motion for a new trial based on the ground of newly available evidence than to an ordinary motion on

that ground.' " *Dick v. State*, 248 Ga. 898, 899 (287 SE2d 11) (1982). In an extraordinary motion for new trial, the movant must satisfy the trial court (1) that the evidence came to his knowledge after the trial; (2) that the delay in acquiring the evidence was not the result of lack of due diligence; (3) that the evidence is so material that it would probably produce a different verdict; (4) that the evidence is not merely cumulative; (5) that the witness's affidavit is provided or its absence explained; and (6) that the evidence does not operate solely to impeach the credibility of a witness. *Spann v. State*, 263 Ga. 336, 337 (434 SE2d 54) (1993). Failure to show one requirement is sufficient to deny the motion. *Humphrey v. State*, 252 Ga. 525, 528 (314 SE2d 436) (1984).

In an affidavit filed with the extraordinary motion, Crowe stated that the facts underlying his present contentions came to light only after the conclusion of his sentencing trial 11 months earlier. He stated that he had withheld the facts from his attorneys until after the initial shock of his sentence and of the death of his mother days thereafter had subsided. The trial court was not required to believe this self-serving affidavit and was authorized to find that Crowe had contemporaneous knowledge of the facts and had not been diligent in raising the issue. Moreover, the trial court also was authorized to find that there was no factual basis to support the assertions in Crowe's motion. The evidence adduced at the hearing on Crowe's extraordinary motion showed that he himself had initiated the interview which resulted in the third statement. Furthermore, the record reflects that, before entry of Crowe's guilty pleas, the trial court expressly told him that it would not impose the sentence, but rather Crowe would proceed to a sentencing trial before a jury which would consider both a life sentence and the death penalty. In response, Crowe indicated that he would like to retain his counsel for the sentencing phase of trial.

16. The trial court did not err by refusing to allow the original indictment to go out with the jury. An indictment is not evidence and the trial court correctly so charged the jury. *Bostick v. Ricketts*, 236 Ga. 304, 305 (223 SE2d 686) (1976).

17. The trial court did not err in refusing to direct a verdict in favor of Crowe with regard to armed robbery as an aggravating circumstance of the murder. In his statements to police which were properly admitted into evidence, Crowe confessed that he planned and executed an armed robbery and that he killed the victim in the course of that armed robbery.

Likewise, the trial court did not err in refusing to direct a verdict in favor of Crowe with regard to aggravated battery as an aggravating circumstance of the murder. Properly admitted evidence showed that, after the victim was shot but before he died, Crowe beat him with a paint can and crow bar. According to Crowe's own description of the

events, all of the injuries he inflicted upon the victim preceded the victim's death. The evidence was, therefore, sufficient to support a finding of aggravated battery. See *Jefferson v. State*, 256 Ga. 821, 828 (353 SE2d 468) (1987).

The aggravating circumstances arose from a continuous and interrelated series of events, but, contrary to Crowe's contention, aggravating circumstances are not invalid simply because they might overlap to some extent. See *Castell v. State*, 250 Ga. 776, 794 (301 SE2d 234) (1983).

18. Crowe contends that various statements made by the prosecutor in closing argument warrant reversal.

(a) In his opening statement, Crowe's counsel told the jury that Crowe had fired his attorneys and pled guilty pro se. In his closing argument, the prosecutor referred to Crowe's failure to introduce evidence to substantiate this claim. This argument was an appropriate response to the opening statement of Crowe's counsel. There was no evidence that Crowe had fired his counsel, merely that he had pled guilty against the advice of his counsel. Furthermore, Crowe failed to object to the argument at trial. Therefore, even if the prosecutor's argument had been improper, there would be no reversible error unless there is a reasonable probability that it changed the result of trial. *Todd v. State*, 261 Ga. 766, 767 (410 SE2d 725) (1991). Considering the overwhelming evidence of aggravation, we find that it did not.

(b) In his opening statement, Crowe's counsel told the jury that Crowe was not playing "lawyer games." In his closing argument, the prosecutor characterized Crowe's defense to imposition of the death penalty as "lawyer games." This argument was an appropriate response to the opening statement of Crowe's counsel. *Burgess v. State*, 264 Ga. 777, 785 (22) (450 SE2d 680) (1994). Moreover, Crowe again made no objection and, even if the prosecutor's argument had been improper, no reversible error would be shown. *Todd v. State*, supra.

(c) In his closing argument, the prosecutor characterized Crowe as someone who

> believes in the death penalty, who believes in the execution of human beings without a jury trial, without *Miranda* warnings, without a tape recorder, without looking them in the eye . . . . Joe Pala can't be here today. You can't find out anything about Joe Pala. . . . Our law says that the only thing you shall consider is David Crowe.

This argument was not improper, since considerable latitude is allotted to prosecutors in making closing argument. *Philmore v. State*, 263 Ga. 67, 69 (428 SE2d 329) (1993). The prosecutor may note the obvi-

ous facts that the victim is gone and that the defendant showed him no mercy. *Moon v. State*, 258 Ga. 748, 760 (375 SE2d 442) (1988). Furthermore, Crowe again made no objection and there is no reasonable probability that this argument, even if improper, changed the outcome of the trial. *Todd v. State*, supra.

(d) Crowe contends that the prosecutor impermissibly injected religion into the sentencing determination by arguing to the jury that "the Bible says that you shall be put to death if you kill somebody. . . ." However, Crowe's own evidence in mitigation consisted largely of appeals to religion. His witnesses included several ministers and fellow churchgoers, all of whom praised Crowe for his Christianity and religious activities, including past service as a minister of music and a deacon. When read in context, the prosecutor's argument is reasonably construed as a legitimate effort to counter these witnesses. The prosecutor did not urge the jury to return a death sentence based on Crowe's religious beliefs or argue that the teachings of a particular religion command the imposition of the death penalty in the case at hand, but merely "allude[d] to such principles of divine law . . . as [were] appropriate to the case." *Hill v. State*, 263 Ga. 37, 45-46 (427 SE2d 770) (1993). Furthermore, Crowe again failed to object and there is no reasonable probability that this argument, even if improper, changed the result of the trial. *Todd v. State*, supra.

(e) Crowe contends that the prosecutor made an impermissible comment on his failure to testify at the sentencing trial by arguing

That man right there (indicating), David Crowe, he's a liar; he's a thief; he's a drug user; he's a murderer; he's a coward. He doesn't have the guts to come in here and tell you the truth. He's done nothing but give you lies. That's all he has the guts to give you.

The trial court did not err in finding that, when this argument is considered in its proper context, it was not an impermissible direct reference to Crowe's failure to testify in person, but a permissible attack on the credibility of Crowe's conflicting statements and particularly his third, videotaped statement. *Ledford v. State*, supra at 68 (18) (b). In his opening statement, Crowe's counsel informed the jury that Crowe was remorseful and had told the truth in his third statement and that the jury would have the opportunity to see Crowe himself on videotape describing the "unfortunate night" and his reasons for killing the victim. Yet Crowe's third statement was both self-serving and inconsistent with his previous statements and the physical evidence. The prosecutor was therefore entitled to argue that Crowe was a "liar" and that the evidence he had submitted in mitigation was "lies," since a prosecutor may argue inferences from the evidence.

*Hill v. State,* supra at 45.

19. Crowe urges that OCGA § 17-8-57 was violated when, in overruling one of his objections to closing argument by the prosecutor, the trial court made a comment on what had been proven in the sentencing trial. "However, remarks of a judge assigning a reason for his ruling are neither an expression of opinion nor a comment on the evidence. [Cits.]" *Johnson v. State,* 246 Ga. 126, 128 (V) (269 SE2d 18) (1980). Moreover, Crowe did not object and " '[t]he question of whether [OCGA § 17-8-57] has been violated is not reached unless an objection or motion for mistrial is made.' " *Driggers v. State,* 244 Ga. 160, 162 (2) (259 SE2d 133) (1979).

20. The trial court gave the standard, general charge on impeachment. Contrary to Crowe's contentions, this charge did not have the effect of instructing the jury that it could disregard undisputed mitigating evidence. Furthermore, contrary to Crowe's contention, the charge could not have authorized the jury to draw an adverse inference from his silence at trial. The trial court specifically instructed the jury that it could not draw an adverse inference from Crowe's failure to testify.

21. Crowe contends that the trial court erroneously failed to instruct the jury that, pursuant to his *Alford* plea, he could still maintain his innocence as to each and every element of the crime of armed robbery.

Crowe waived his right to enumerate any error in the charge and the charge, as given, was not erroneously deficient as a matter of law. It informed the jury of the definition of an *Alford* plea and the definition of armed robbery and the trial court further charged that the jury had to find that the armed robbery was a statutory aggravating circumstance beyond a reasonable doubt. Moreover, a charge based upon Crowe's claim of innocence to the offense of armed robbery would not have been adjusted to the evidence. Crowe made no claim of innocence at the time he entered the *Alford* guilty plea and his contention that he made a claim of innocence in his third statement, wherein he asserted that he took the money from the dead victim only as an afterthought, incorrectly assumes that one cannot rob a dead victim. See *Prince v. State,* 257 Ga. 84, 85 (355 SE2d 424) (1987). Crowe confessed to all of the elements of armed robbery in his third statement, and he based his entire defense to the imposition of the death penalty upon the veracity of that statement. Finally, even if the trial court had erroneously instructed the jury with regard to Crowe's *Alford* plea to armed robbery, the death sentence would still be supported by two additional aggravating circumstances. See *Hill v. State,* supra at 46.

22. Crowe contends that the trial court erred in refusing to give a requested charge on the definition of "maliciously" in connection with

its charge on aggravated battery.

The trial court did not give an erroneously incomplete charge on the definition of "maliciously," it merely failed to give any charge on the definition of that term. Compare *Wade v. State*, 258 Ga. 324, 331 (368 SE2d 482) (1988). However, even assuming, without deciding, that the trial court erred in failing to give Crowe's request to charge on the definition of "maliciously," that error would be harmless if there was overwhelming evidence that Crowe committed an aggravated battery with malice. *Wade v. State*, supra at 331. The undisputed evidence, including Crowe's own statements, shows that he brutally beat and disfigured the victim before death and that he did so intentionally and without justification or serious provocation. Based upon this overwhelming evidence, any error would be harmless. Compare *Wade v. State*, supra at 331. Moreover, even if there was harmful error, reversal would not be warranted because the death sentence can still stand based upon the remaining two aggravating circumstances. See *Hill v. State*, supra at 46.

23. The trial court did not err in denying Crowe's post-conviction motion for recusal of the assistant district attorney. At the hearing on his motion, Crowe offered no evidence in support thereof.

*Death Penalty Statute*

24. Crowe contends that the death penalty statute is unconstitutional because it gives district attorneys unfettered discretion.

Contrary to Crowe's contention, district attorneys do not have unfettered discretion under the death penalty statute. A district attorney's decision to seek the death penalty requires the exercise of professional judgment as to whether an aggravating circumstance exists and, thus, as to whether the imposition of the death penalty should be submitted for a jury's determination. The decision to impose the death penalty is entirely with the jury and cannot be upheld absent a finding that an aggravating circumstance does in fact exist. That different district attorneys may vary in their decisions to seek the death penalty and that different juries may return varying verdicts as to the imposition of the death penalty does not show that Crowe's constitutional rights were violated. See *Rower v. State*, 264 Ga. 323, 324 (443 SE2d 839) (1994).

25. Although Crowe contends that the phrase "outrageously or wantonly vile, horrible or inhuman" in OCGA § 17-10-30 (b) (7) is unconstitutionally vague, the Supreme Court of the United States and this court have already upheld the statute against this constitutional attack. *Godfrey v. Georgia*, 446 U. S. 420 (100 SC 1759, 64 LE2d 398) (1980); *Taylor v. State*, 261 Ga. 287, 295-296 (404 SE2d 255) (1991).

*Death Penalty Review*

26. As discussed in Division 1, the evidence supports the jury's findings of the following aggravating circumstances: that Crowe committed the murder during the course of another capital felony, armed robbery, OCGA § 17-10-30 (b) (2); that Crowe committed the murder for the purpose of receiving money, OCGA § 17-10-30 (b) (4); and that the murder was outrageously and wantonly vile, horrible or inhuman in that it involved depravity of mind and an aggravated battery, OCGA § 17-10-30 (b) (7).

27. We do not find that Crowe's death sentence was imposed under the influence of passion, prejudice or other arbitrary factor. OCGA § 17-10-35 (c) (1). The death sentence is not excessive or disproportionate to penalties imposed in similar cases, considering both the crime and the defendant. The similar cases listed in the Appendix support the imposition of the death sentence in this case.

*Judgments affirmed. All the Justices concur.*

APPENDIX.

*Burgess v. State*, 264 Ga. 777 (450 SE2d 680) (1994); *Meders v. State*, 261 Ga. 806 (411 SE2d 491) (1992); *Ferrell v. State*, 261 Ga. 115 (401 SE2d 741) (1991); *Stripling v. State*, 261 Ga. 1 (401 SE2d 500) (1991); *Kinsman v. State*, 259 Ga. 89 (376 SE2d 845) (1989); *Lee v. State*, 258 Ga. 762 (374 SE2d 199) (1988); *Holiday v. State*, 258 Ga. 393 (369 SE2d 241) (1988); *Frazier v. State*, 257 Ga. 690 (362 SE2d 351) (1987); *Jefferson v. State*, 256 Ga. 821 (353 SE2d 468) (1987); *Cargill v. State*, 255 Ga. 616 (340 SE2d 891) (1986); *Berryhill v. State*, 249 Ga. 442 (291 SE2d 685) (1982); *Smith v. State*, 249 Ga. 228 (290 SE2d 43) (1982); *Cunningham v. State*, 248 Ga. 558 (284 SE2d 390) (1981); *Thomas v. State*, 248 Ga. 247 (282 SE2d 316) (1981); *Solomon v. State*, 247 Ga. 27 (277 SE2d 1) (1981); *Dick v. State*, 246 Ga. 697 (273 SE2d 124) (1980).

DECIDED JUNE 26, 1995 —
RECONSIDERATION DENIED JULY 17, 1995.

*Michael Mears,* for appellant.

*David McDade, District Attorney, William H. McClain, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Paula K. Smith, Assistant Attorney General,* for appellee.