**Samuel David CROWE Petitioner**

v.

**Frederick HEAD Respondent**

**No. CIV.1:02–CV–2265–ODE.**

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 21, 2005.

Ann Grunewald Fort, Amelia Toy Rudolph, Sutherland Asbill & Brennan, Rob-

ert L. McGlasson, II, Federal Defender Program, Atlanta, GA, for Plaintiff.

Susan Virginia Boleyn, Office of State Attorney General, Atlanta, GA, for Defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This § 2254 death penalty case is before the Court on the parties' briefs on the issue of procedural defenses. Having reviewed the briefs, the Court makes the following rulings. Further, the Court directs the parties to file further briefs as specified below.

## I. Case History

1. Trial, Extraordinary Motion for New Trial, and Consolidated Appeal Proceedings

Petitioner was arrested for the murder of Joseph Pala on March 3, 1988. Shortly thereafter he gave two tape-recorded confessions to Earl Lee, the county sheriff.[1] In April 1988, Crowe hired Michael Bergin,[2] an attorney experienced in defending death penalty cases, to defend him against capital murder and armed robbery charges in the Superior Court of Douglas County. Crowe's mother agreed to pay Bergin $70,000 to represent her son.[3] Against Bergin's advice, Crowe entered a guilty plea[4] to the murder charge and an *Alford*[5] plea to the armed robbery charge on May 5, 1989. The trial court, Superior Court Judge Robert J. James, accepted Petitioner's guilty pleas but warned him that the

sentencing jury might impose the death penalty for the murder conviction.

A three-day jury sentencing hearing ensued in which Crowe was represented by Bergin. The State called Sheriff Earl Lee who testified to Crowe's confessions, a ballistics expert who testified that the bullets in the victim came from Crowe's gun, and an expert who matched paint splatters from the crime scene with paint in a can in Crowe's car. The State also presented photographs of the victim's injuries (gunshot and assault wounds, paint on victim's head), the gun that allegedly killed the victim, the crowbar and paint can allegedly used to beat the victim, Crowe's tennis shoes with tread which matched the paint tracks at the scene, and the victim's clothing and keys which were found in Crowe's car. The State also presented Crowe's taped confessions.

In mitigation, Bergin called a number of witnesses, including Crowe's prison chaplain, his co-worker, brother-in-law, former supervisor, music professor, family members, and friends from church. Each testified as to Crowe's peaceable nature, positive background, and love of family and music. Crowe did not testify.

The jury sentenced Petitioner to death for the murder, and the court imposed a consecutive life sentence for the armed robbery offense.

Bergin filed a timely notice of appeal to the Georgia Supreme Court on December 8, 1989. He also filed an extraordinary motion for new trial on April 16, 1990. This motion raised the claim that, without

1. About a year later Crowe gave a further, videotaped confession to Lee.

2. Bergin was assisted by co-counsel Randie Siegal. For ease of reference, the defense team will be referred to as "Bergin".

3. Bergin received $20,000 in cash. He accepted a deed for the remainder.

4. The Court notes Crowe's characterization of the plea as a "pro se" plea.

5. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

Bergin's knowledge, Crowe had been persuaded to plead guilty by Sheriff Lee, in violation of Crowe's Sixth Amendment right to counsel. The motion also claimed the State seized confidential attorney/client communications in violation of Crowe's privilege against self incrimination. Crowe sought an evidentiary hearing to prove his grounds for a new trial. The trial court dismissed the motion on April 20, 1990.

Crowe appealed from the dismissal of his extraordinary motion for a new trial to the Supreme Court of Georgia. The Court remanded the case to the Superior Court of Douglas County and ordered a hearing solely on the issues Petitioner had raised in his extraordinary motion for new trial. Superior Court Judge David Emerson [6] then held an evidentiary hearing on the motion on March 3, 1994. Michael Bergin testified about Crowe's conversations with Sheriff Lee preceding his guilty plea where Sheriff Lee allegedly persuaded Crowe to plead guilty and told Crowe that, if he pled guilty, the court would not sentence him to death.[7]

Judge James testified and acknowledged receiving two telephone calls from Crowe before trial. He testified Crowe said while he was generally satisfied with Bergin's representation, there were some problems. He said Crowe never explained the problems in detail. Judge James said he simply told Crowe to talk with Bergin and his family about any problems. Judge James testified that Crowe never told him about his conversations with Sheriff Lee or that he wanted to plead guilty.

Sheriff Lee testified that Crowe initiated all of their conversations. He testified that when Crowe asked him for advice, he told him that he would plead guilty given the amount of evidence against him. However, the Sheriff said he only offered that advice from a personal perspective, i.e. what he would do in Crowe's shoes. He took Crowe's third statement only after Crowe wrote him, expressing his desire to give the statement. Sheriff Lee denied ever giving Crowe Judge James's telephone number. He denied ever making negative comments about Bergin or the effect Bergin's representation was having on Crowe's case. The Sheriff originally denied the fact that Crowe ever told him about his dissatisfaction with Bergin, but he then acknowledged seeing a letter from the District Attorney to Judge James, which stated that Crowe had told Sheriff Lee he wanted to fire his lawyer. Judge Emerson denied the extraordinary motion for new trial in a 31–page written order which made findings of fact and conclusions of law.

Mears filed a consolidated appeal on Crowe's behalf in the Supreme Court of Georgia as to the entry of his guilty pleas, the imposition of the death penalty, and the denial of his extraordinary motion for new trial. The court rejected Crowe's challenges, affirmed his convictions and sentences, and affirmed the denial of the extraordinary motion for a new trial. *Crowe v. State*, 265 Ga. 582, 458 S.E.2d 799 (1995). The Supreme Court of Georgia denied Crowe's motion for reconsideration on July 17, 1995.

---

**6.** Judge James had recused himself on Crowe's request. Crowe was represented by Michael Mears and Nancy Mau Markle, Multi–County Public Defenders during the hearing on the extraordinary motion for new trial (hereinafter Mears). Mears filed a post-hearing brief on Crowe's behalf.

**7.** Crowe did not testify at the hearing except as to the fact of his indigency. Crowe's affidavit regarding his conversations with Lee was not admitted into evidence. Judge Emerson rejected the argument that the affidavit should be admitted in place of Crowe's live testimony so that Crowe would not be exposed to cross-examination. Bergin had not been present at Crowe's discussion with Lee.

On December 8, 1995, Crowe through counsel filed a petition for a writ of certiorari with the United States Supreme Court, but it was denied on February 26, 1996. *Crowe v. Ga.*, 516 U.S. 1148, 116 S.Ct. 1021, 134 L.Ed.2d 100 (1996). A petition for rehearing was denied on April 15, 1996. *Crowe v. Ga.*, 517 U.S. 1151, 116 S.Ct. 1455, 134 L.Ed.2d 573 (1996).

### 2. First and Second State Habeas Corpus Proceedings

Crowe, pro se, filed a petition for writ of habeas corpus in the Superior Court of Butts County; however, it was dismissed without prejudice as premature because the petition for certiorari in the main case was still pending. Following the denial of the petition by the U.S. Supreme Court,

Crowe, through new counsel,[8] filed a second petition[9] for a writ of habeas corpus in the Superior Court of Butts County on December 6, 1996. It was amended on September 5, 1997.

Crowe requested discovery and an evidentiary hearing. Superior Court Judge William Towson granted Crowe's request for discovery. Depositions of Kelly Fite, the crime scene investigator, Judge Robert James, Sheriff Lee, District Attorney Frank Winn, and Assistant District Attorney Henry McClain were taken, and documents were produced.[10] Evidentiary hearings were conducted on July 6, 1998, December 4, 1998,[11] and January 28 and 29, 1999. Crowe presented the live testimony of Michael Bergin[12] and Dr. Martha Loring, a clinical social worker and sociol-

8. New counsel were Ann G. Fort, Amelia T. Rudolph, John H. Fleming, and Richard G. Murphy, Jr., lawyers with the law firm of Sutherland, Asbill and Brennan, LLP. They have represented Crowe both in the state habeas proceeding and in the instant federal habeas petition. In the federal habeas case Robert L. McGlasson, of the Federal Defender Program, Inc. of the Northern District of Georgia, and Palmer C. Singleton, III, of the Southern Center for Human Rights have acted as additional counsel.

9. Because the first habeas petition was dismissed without prejudice as premature, the second petition is the "first" for purposes of Georgia's successive petition doctrine, which generally requires that Petitioner assert all claims in the first petition. See O.C.G.A. § 9–14–51.

10. During the hearings Crowe introduced documents into evidence which were gleaned from discovery: all documents the Sheriff's Department, District Attorney's office, Georgia Bureau of Investigation, and Georgia Department of Corrections submitted in response to Crowe's Open Records Act request; "Life History Official Records," such as marriage certificates, birth certificates, adoption papers, and school and medical records; a collection of articles relating to the role genetics have in predisposing people to alcohol and/or drug abuse prior to the murder; all

motions filed by Crowe's counsel that allegedly activated the State's duty to produce *Brady* evidence to the defense, such as various scientific reports, photographs, transcripts of witness statements, and reports written by Sheriff's deputies; communications relating to the fee dispute between Bergin and co-counsel, Randie Siegel; checks from Crowe to Henry Dobbs; summaries of interviews by investigators of potential mitigation witnesses; transcript of Bergin's interview with Crowe on April 1 and 6, 1989; petition to allow examination and copying of Crowe's adoption records; and subpoena for Michael Lavoie, Director of the Office of Vital Records, Georgia Department of Human Resources. The state also submitted several documents; polygraph results for Crowe and Wanda Crowe, Petitioner's wife; Crowe's school records; grand jury list; enhancement of tape recorded statement by Crowe to Sheriff Lee; Officer Skinner's report; autopsy report; transcript of interview between Crowe and Sheriff Lee on March 3, 1988; state's witness list on July 20, 1988; and pre-sentence investigation report.

11. Hunter Jefferson, also from Sutherland, Asbill, and Brennan, LLP, was present on Crowe's behalf at the December evidentiary hearing.

12. Bergin testified about his extensive investigation and over 800 hours of trial prepara-

ogist.[13] Crowe also submitted and the court admitted into evidence affidavits of Dr. Randall Tackett, an expert in substance abuse,[14] Dr. Leroy Riddick, a forensic pathologist,[15] Mary Brown Sinclair, who conducted a post-conviction investigation of Crowe's life history, Betty Ketchens, who identified and attached a "life history affidavit," Watson Camp, the executor of Hazel Crowe's estate, Randie Siegel, John Cruz, a Sheriff's Department deputy, Laton Earl Duncan, a pharmacist, Amanda Huff Sweatman, Hope Huff, and Odell Huff, all Crowe's neighbors, Barbara McCarthy, Crowe's teacher, Gregory Steven Everett, Crowe's college professor, Stan Copeland, County jail employee, Janis Ann Gandy Arwood and Danny Lynn Gandy, Crowe's half siblings, affidavits regarding Crowe's parentage, and affidavits of trial jurors and bailiffs.[16] Crowe did not testify himself at the habeas hearing.

The State presented the live testimony of jurors Tena Mahs, Sheryl Mitchell, and Patricia Green, and bailiffs Raye Anna Lyle and Joanne Cole Adams,[17] all of whom served during Crowe's sentencing hearing. The State also presented affidavits of Randie Siegel, Judge Robert James, Frank Winn, and jurors Harry Toone, Cheryl Mitchell, Thomas Blue, and Charles Neugent, all of which were admitted into evidence.

■ In a lengthy order entered on July 14, 2000, which made extensive findings of fact and conclusions of law, Judge Towson also dismissed many of Petitioner's claims because they had been litigated on direct appeal and thus were barred from state habeas review pursuant to Georgia law which provides "[a]fter an appellate review the same issues will not be reviewed on habeas corpus."[18] *Elrod v. Ault,* 231 Ga.

---

tion. He described Crowe as an untruthful client who misled him and kept changing his story. Bergin actually had Crowe submit to a lie detector test in order to determine when and what Crowe was telling the truth about.

13. Dr. Loring testified that Crowe, at the time of the murder, suffered from Post Traumatic Stress Disorder, substance abuse, and depression, all of which were caused by his abusive childhood.

14. Dr. Tackett's affidavit explained that if Bergin had presented Crowe's history of drug use to any expert, that expert would have concluded that Crowe was addicted to alcohol, cocaine, and marijuana. Dr. Tackett also explained that Crowe's drug use had a significant impact on his actions and thought processes during and after the crime.

15. Dr. Riddick's affidavit attacked the qualifications, methods, and conclusions of Dr. Dawson, the State's forensic pathologist who testified in the sentencing trial.

16. Tena Mahs, Thomas Blue, Russell Wham, and Anthony Lock.

17. Respondent submitted their affidavits and called them as witnesses.

18. Judge Towson designated these claims as follows: (A) interference with right of counsel based on (i) Judge James and the State participating in a scheme to coerce Crowe into dismissing his lawyer and pleading guilty; and (ii) failure of Judge James to intervene after learning Sheriff Lee took an allegedly unconstitutional statement from Crowe; (B) trial court's failure to prevent the use of false evidence by sending out a "cleansed" indictment with the jury; (C) unconstitutional limits on mitigation evidence by trial court's failure to send out original indictment with the jury, and allowing the State to play selected portions of Crowe's videotaped statement without requiring the whole statement be introduced; (D) prosecutorial misconduct based on State's representation that Crowe was represented by counsel when he pled guilty, the State's allegedly improper closing arguments, and the State's presentation of a "cleansed" indictment to the jury, (E) suppression of evidence, such as Sheriff's deputies's reports, and trial court's failure to seal the State's file or conduct an in camera inspection of the file; (F) jury view of the scene and reenactment of the crime; (G) prejudicial reenactment of the crime and view of the crime scene, (H) unconstitutional acceptance of Crowe's guilty and *Alford* pleas without

750, 750, 204 S.E.2d 176 (1974) (citations omitted). This ruling, while legally correct under Georgia law, does not insulate these claims from review in this § 2254 proceeding. Rather, these claims will be reviewed under the strictures imposed by 28 U.S.C. §§ 2254(d) and (e) on federal review of claims decided on their merits by state courts. These are not "procedurally defaulted" claims for purposes of § 2254 review.

Judge Towson also dismissed some claims because Crowe either failed to timely object to alleged trial errors or did not timely pursue the claimed errors on direct appeal, rather than waiting to raise them for the first time in his state habeas petition. This was a classic application of Georgia's procedural default rule which precludes review by the state habeas court of untimely claims unless the petitioner can show "cause" for the failure to timely object or appeal and "prejudice" if the claim is not considered, or that a "miscarriage of justice" would result because there was a substantial denial of constitutional rights. *Black v. Hardin*, 255 Ga. 239, 240, 336 S.E.2d 754 (1985). Judge Towson applied this procedural default rule to two groups of claims: first, with respect to certain claims, he stated, "to the extent to which this claim exceeds the scope of the claim ruled upon on direct appeal, the claim is barred based on procedural default".[19] Second, Judge Towson, citing *Black*, ruled that certain other specified claims in the state habeas petition "could have been litigated at an earlier stage, but were not," [20] and thus were procedurally defaulted. Order, p. 20. Judge Towson concluded that Crowe failed to demonstrate "cause" for late assertion of all claims in these two groups except one (suppression of evidence), and that he had failed to demonstrate "prejudice" on all of the claims. Therefore, he ruled that all

determining if he was aware of the consequences of entering the pleas; (I) admission of Crowe's pretrial suppression hearing statement; (J) admission of illegally obtained evidence, such as Crowe's first and second tape recorded statements to Sheriff Lee, his third videotaped confession to Sheriff Lee, and physical evidence obtained in Crowe's home; (K) admission of victim impact testimony, (L) admission of inflammatory photos, (M) errors in jury selection by excluding jurors in favor of and opposed to the death penalty, a juror biased in favor of the State, and a juror whose business was involved in the State's investigation; (N) erroneous jury charges regarding impeachment, aggravated battery, and the effect of Crowe's allegedly pro se guilty plea and *Alford* plea; and (O) failure to grant a directed verdict to the defense. These claims correspond, respectively, to Claims 1–3, 4 (¶¶ 63–67), 5 (¶¶ 71 and 77), 6 (¶ 81), 9–14, 15 (¶¶ 121–124), 16 (¶ 126, and ¶¶ 130–132), and 17 of the instant federal petition.

19. Judge Towson designated these claims as follows: (A) interference with right of counsel; (B) trial court's failure to prevent the use of false evidence, (C) unconstitutional limits on mitigation evidence, (D) prosecutorial misconduct, (F) juror misconduct, (G) prejudicial

reenactment of the crime and view of the crime scene, (J) admission of illegally obtained evidence, and (N) erroneous jury charges.

20. Judge Towson designated these claims as follows: (A) Prosecutorial misconduct based on the State's use of the Georgia Crime Information Center ("GCIC"); (B) State suppression of exculpatory impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (C) juror misconduct based on jury deliberation of the case before the close of evidence, consideration of comments the bailiff made about the motivations of defense counsel at trial, and participation by alternate jurors in deliberation; (D) trial counsel's alleged conflict of interest based on the fact that Petitioner's mother paid counsel to represent Petitioner and counsel allegedly had a fee dispute with Petitioner's mother (E) trial court's failure to question jurors regarding their possible arrest for, or conviction of, a crime; (F) trial court's improper instructions to jurors about the definition of reasonable doubt, and requirement that they agree unanimously on the existence of mitigating factors.

claims in these two groups were procedurally defaulted and he did not address the merits of these claims.

Because the doctrine of procedural default is recognized and applied in federal habeas proceedings as a matter of comity and federalism, and Crowe has not shown that these procedural default rulings were not "independent and adequate" under federal habeas corpus law,[21] rulings by the state court bar this Court from reviewing these two groups of claims[22] in Crowe's federal habeas petition unless Petitioner can show "cause" for the default and "prejudice attributable thereto" or "demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Crawford v. Head,* 311 F.3d 1288, 1327 (11th Cir.2002) (citing *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). Despite the fact that Judge Towson held Petitioner did not show cause and prejudice or a miscarriage of justice, these conclusions are subject to this Court's independent review because § 2254(d) pertains to claims decided on their merits (not claims rejected on procedural grounds). This matter is discussed more fully below.

Judge Towson also found that Crowe's claim of ineffective assistance of counsel was properly before the court as it had been raised at the first available opportunity;[23] however, he found insufficient evidence of ineffective assistance of counsel, considering the claims separately and cumulatively. He concluded that Bergin had not been ineffective, therefore, Crowe's defense had not been prejudiced. This determination on the merits is subject to this Court's review under §§ 2254(d) and (e).

Crowe filed a notice of appeal on August 9, 2000. The Georgia Supreme Court denied Petitioner's application for a certificate of probable cause to appeal on May 28, 2002. Petitioner then filed a motion for reconsideration on June 7, 2002, but it was denied on July 12, 2002. He filed a petition for a writ of certiorari to the United States Supreme Court on October 9, 2002, which was denied on January 13, 2003.

### 3. Third State Habeas Corpus Proceeding

Crowe's third petition for writ of habeas corpus was filed in Butts County Superior Court on August 15, 2002, through counsel. He asserted four claims.[24] Chief Judge E. Byron Smith entered a written order denying the claims on September 17, 2002. He did not hold a hearing and did not rule

---

**21.** The issue of whether the state procedural rules were "independent and adequate" is discussed below on p. 18.

**22.** See n. 19 and 20, supra. Judge Smith also properly deemed Crowe's twenty-first (21st) claim as barred under the successive petition doctrine and thus it is procedurally defaulted.

**23.** Michael Bergin represented Crowe during the trial, appeal, and in filing the extraordinary motion for new trial. Therefore, the state habeas court was the proper court in which to raise the issue of Bergin's claimed ineffectiveness and the second habeas petition was the correct vehicle for his claims as the first habeas petition was dismissed without prejudice.

**24.** The claims were: (I) Petitioner was sentenced to death under a statute which was declared unconstitutional, so his death sentence is null and void and, if carried out, would violate his rights under the Georgia and United States Constitutions; (II) execution by lethal injection is cruel and unusual punishment; (III) the lack of a uniform standard for seeking the death penalty across Georgia renders Petitioner's death sentence unconstitutional under *Bush v. Gore,* 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000); and (4) the modern death penalty system's failure to eliminate the risk of executing innocent people violates Due Process and constitutes cruel and unusual punishment. These claims correspond to claims 18–21 of the instant federal petition.

on Respondent's pending motion to dismiss.

Judge Smith first noted that Petitioner's third habeas petition was successive. He stated, "[b]ecause this petition is successive, all issues are analyzed under O.C.G.A. § 9–14–51. Specifically, the inquiry is whether Petitioner could have reasonably raised an issue in a previous petition and whether the issue, if it could have reasonably been raised previously, is constitutionally non-waivable". Order, p. 2. Judge Smith then analyzed each of the claims and found that claims I–III lacked merit and that claim IV was barred as successive.[25]

▉ As the Court reads Judge Smith's order, it is not clear whether he actually determined that claims I–III were barred by Georgia's successive petition rule (because they should have been raised in the earlier state habeas petition) or whether he resolved these claims on their merits. This Court believes his rulings on claims I–III are better construed as the latter. Further, with respect to claims I and II, the legal and factual basis for the claims did not exist in time for Crowe to assert them in the earlier state habeas petition. With respect to Claim III, Judge Smith found that the same claim had already been determined on its merits on direct

appeal and in the Georgia Supreme Court's proportionality review of his sentence. Therefore, this claim can be reviewed by this Court on the merits under § 2254. For these reasons, claims I–III, or claims eighteen (18), nineteen (19), and twenty (20), respectively, of the instant federal petition are determined not to be defaulted and will be analyzed on their merits under 28 U.S.C. §§ 2254(d) and (e). Claim IV (also claim twenty-one (21)) should and could have been raised in Crowe's second petition and has not been raised otherwise. Thus it is barred as successive. This Court will undertake no further review of claim twenty-one (21) of the instant petition.

Petitioner filed a motion for reconsideration in the Superior Court of Butts County on September 27, 2002, but it was denied on October 29, 2002. He subsequently filed his application for certificate of probable cause to appeal on October 21, 2002, however, the Supreme Court of Georgia denied it on January 14, 2003.

### 4. The Instant Federal Habeas Corpus Proceeding

Crowe filed the instant federal petition at the same time he filed his third state habeas corpus petition on August 15, 2002, and amended it on May 9, 2003. He has asserted twenty-two (22) claims in the amended federal habeas petition (hereinafter "petition").[26] The petition seeks dis-

---

25. Claims I–IV correspond to claims 18–21 in the instant petition.

26. The claims as numbered and described in the petition are: (1) Interference with right to counsel; (2) failure to prevent the use of false evidence; (3) unconstitutional limits on mitigation evidence; (4) prosecutorial misconduct; (5) suppression of evidence; (6) juror misconduct; (7) trial counsel's conflict of interest; (8) ineffective assistance of counsel; (9) prejudicial re-enactment of the crime and view of crime scene; (10) unconstitutional acceptance of a guilty plea; (11) admission of a statement protected by the Fifth Amendment; (12) admission of illegally obtained evidence; (13) admission of victim impact

evidence; (14) admission of inflammatory photograph; (15) errors in jury selection; (16) erroneous jury charges; (17) failure to grant directed verdict to the defense; (18) death sentence was imposed under a statute declared unconstitutional; (19) execution by lethal injection is cruel and unusual punishment; (20) lack of a uniform standard for seeking the death penalty across Georgia; (21) failure of Georgia's death penalty system to eliminate the risk of executing innocent persons; and (22) the state habeas court failed to grant Crowe a "full and fair hearing", in that it failed to provide state-compensated counsel and state-compensated expert witnesses.

covery,[27] an evidentiary hearing, and relief from the conviction and death sentence.

Respondent filed an Answer–Response on June 9, 2003, which responded on a claim-by-claim basis, denying the validity of each claim. The State also asserted that paragraph sixty-six (66) of claim Four (4) (urging impropriety of prosecutor's "divine sanctions" argument) is an unexhausted claim that should be deemed procedurally defaulted as it was not raised on direct appeal, and would be treated as "successive" (i.e., waived by virtue of not being in the initial habeas petition on the merits) if sent back to state court. Therefore, sending this claim back to state court would be fruitless. Respondent also urged that claim twenty-two (22) fails to state a claim for which relief can be granted, that numerous specified claims are barred by procedural default as found by Judge Towson, that Petitioner should be barred from bringing in new evidence to support claims seven (7) and eight (8) under *Keeney v. Tamayo Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), and that claims eighteen (18) through twenty-one (21) are barred under Georgia's successive claim doctrine. Respondent urged this Court to show deference to the state court's determinations under 28 U.S.C. §§ 2254(d) and (e). Respondent also took the position that no further discovery is needed, no federal evidentiary hearing should be held, and that no relief should be granted.

The parties by agreement filed briefs addressing Respondent's procedural defenses only. The Court has reviewed these briefs.

## II. Rulings and Further Direction

The Court will reserve its ultimate conclusion as to whether Petitioner is entitled to relief from his conviction and death sentence until it receives further briefing by the parties. However, the Court makes several rulings, as explained below.

1. Claims determined on the merits by the Georgia Supreme Court on direct review and dismissed by the state habeas court pursuant to *Elrod v. Ault*

A state court's rejection of Petitioner's constitutional claim based on state procedural default generally precludes subsequent federal habeas review of that claim. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir.2001) (citing *Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir.1990)).

As stated above, Judge Towson dismissed some of Crowe's claims because those claims already had been ruled on by the Georgia Supreme Court. *Elrod v. Ault*, 231 Ga. 750, 204 S.E.2d 176 (1974). *Elrod* does not establish a procedural ground which bars later federal habeas review. Put another way, it is not a default rule at all. It simply bars a double, or repetitive review by a state habeas court of a claim which the state supreme court has already ruled on. A federal court will review the state supreme court's ruling on the merits of such a claim under the standards of 28 U.S.C. § 2254(d). *See Hightower v. Schofield*, 365 F.3d 1008, 1014 (11th Cir.2004) (holding the Superior Court of Butts County's refusal to review a claim based on *Elrod* invoked 28 U.S.C. § 2254(d)). Therefore, the claims Judge Towson dismissed under *Elrod* (and which were resolved on the merits by the Georgia Supreme Court) will be reviewed by this Court under § 2254(d).

2. Surplusage Claims

Surplusage claims are those Judge Towson dismissed by stating, "to the extent to

---

**27.** This Court denied Petitioner's discovery request on January 16, 2004, during a report-ed conference with counsel.

which this claim exceeds the scope of the claim ruled upon on direct appeal, the claim is barred based on procedural default."[28] The effect of this language is to apply Georgia's classic procedural default rule to those claims Crowe could have raised on direct appeal, but failed to do so. Comity and federalism mandate deference to this determination.[29] While the Court notes Petitioner's complaint that Respondent has not shown what "surplusage" is subject to the procedural default analysis, the Court considers this Petitioner's burden. Petitioner did not choose to undertake this task, and this Court will not embark on an unguided analysis of this issue. Therefore, this issue will not be further examined.

3. Other Procedurally Defaulted Claims

■ Georgia treats as procedurally defaulted, or waived, any claim which was not timely raised at trial and on direct appeal, and which is later asserted for the first time in the state habeas petition. To preclude federal review, the state court's procedural ruling must rest on "independent and adequate" state grounds. *Judd*, 250 F.3d at 1313 (citing *Coleman v. Thompson*, 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).[30]

As discussed above, Judge Towson dismissed several of Crowe's claims[31] pursuant to this rule.[32] This procedural rule constitutes an "independent and adequate" state procedural ground in the sense that

it is exclusively a state doctrine and it is not an arbitrary rule; rather it is regularly applied by Georgia courts. *See Hightower*, 365 F.3d at 1037, *Head v. Carr*, 273 Ga. 613, 544 S.E.2d 409, 412 (2001); *Davis v. Turpin*, 273 Ga. 244, 539 S.E.2d 129, 131 (2000). Petitioner argues, nonetheless, that Judge Towson's reliance on this rule has not been shown to be "adequate," citing *Judd*, 250 F.3d 1308 (11th Cir.2001).

Petitioner is mistaken for two reasons. First, Petitioner has failed to articulate why this procedural default rule in relation to each of the affected claims is not "adequate." This is Petitioner's obligation. It is not up to this Court to ferret out all hypothetical possibilities. Second, the unusual facts of *Judd* do not establish a principle which has any apparent application to this case.

In *Judd*, the Alabama Supreme Court refused to consider Judd's claim on direct appeal that the trial court had violated his right to a public trial by clearing the courtroom during the testimony of a minor. The state supreme court rejected Judd's claim on a procedural ground, ruling that his failure to provide a transcript of a discussion in the judge's office was a violation of *Montgomery v. State*, 504 So.2d 370, 372 (Ala.Cr.App.1987) ("The burden is on the appellant to bring the record before an appellate court."). Judd had not included a transcript of the discussion in the judge's office, which had immediately preceded the closing of the courtroom.

28. See n. 19, supra.

29. As the Court reads Judge Towson's order, his reference to these surplusage claims seems prophylactic. The mere fact that the court addressed "surplusage" if any does not necessarily mean such claims exist.

30. A determination of whether the state procedural rule is independent and adequate should precede a determination of whether

the petitioner can show cause and prejudice to excuse the default. If the rule is not "independent and adequate" then there is no need to consider whether "cause" and "prejudice" exist. *See* Ira P. Robbins, Habeas Corpus Checklist § 13:3 (2005 ed.).

31. See n. 20, supra.

32. *Black*, 255 Ga. at 240, 336 S.E.2d 754.

In reviewing the State of Alabama's contention that Judd's public trial claim had been procedurally defaulted, the United States Court of Appeals for the Eleventh Circuit found that the application of the procedural rule by the Alabama Supreme Court was arbitrary, and hence "inadequate." *Judd,* 250 F.3d at 1314. The Eleventh Circuit noted that the record which had been before the Alabama Supreme Court showed that the courtroom had been totally cleared of spectators during the minor's testimony, the defense objected on the record in open court, and the record did not include any findings by the trial judge justifying a need to close the court. Further, a hearing in the federal habeas court had shown that the trial judge had not addressed the issue of closing the courtroom at the conference in his office. There was no supplemental record available which would have shed any additional light on the public trial issue on direct appeal. Therefore, the Eleventh Circuit found the Alabama Supreme Court's reliance on the state procedural rule was manifestly unfair. *Id.* at 1318. Put another way, the Alabama Supreme Court's factual premise (that Judd had failed to provide all of the relevant record on appeal) was faulty, making application of the default rule arbitrary.

■ Crowe's case is different. Here, the state habeas court merely applied Georgia's classic procedural default rule concerning failure to timely raise objections and to timely appeal issues. It appears that these failures occurred, and Petitioner has not identified in his brief where Judge Towson was wrong.[33] This failure constitutes independent and adequate state procedural grounds as it is a regularly applied state procedural doctrine. Therefore, this Court will accept the state court's findings of procedural default, i.e. that Crowe failed to timely object or appeal those issues.

■ As noted above, however, § 2254 does not call for this Court to accord deference to the state court findings of no cause and no prejudice.[34] Section 2254(d) applies only to *claims* decided on their merits by state courts. While § 2254(e)(1) creates a statutory presumption of correctness for state court determinations of *factual issues,* the presumption of correctness applies only to findings of fact, not mixed determinations of law and fact. *Parker v. Head,* 244 F.3d 831, 836 (11th Cir.2001) (citing *McBride v. Sharpe,* 25 F.3d 962, 971 (11th Cir.1994)). *See also Henderson v. Campbell,* 353 F.3d 880, 891 (11th Cir. 2003). Applied to Petitioner's case, Judge Towson's overall determination that Petitioner did not show cause and prejudice to overcome the procedural default is not a question of fact and is not presumed correct. *See also Parker v. Turpin,* 60 F.Supp.2d 1332, 1341 (N.D.Ga.1999). In further briefing, Petitioner may seek to satisfy the cause and prejudice and miscarriage of justice standard on a claim-by-claim basis.

### 4. Merit Based Determinations

Where a state court applies federal law in ruling on the merits of claims in a state habeas corpus petition, federal courts may review the opinion to ensure that the state

---

33. Crowe claims that Exhibit A of his Response to Respondent's Memorandum of Law on Procedural Defenses makes this showing; however, it does not.

34. *See Crawford,* 311 F.3d 1288, 1324–27 (reviewing the propriety of the state court's determination that defendant did not show cause and prejudice to excuse his failure to raise a *Brady* claim. The state court's rejection of defendant's claim "on the basis of procedural default (in light of its finding that [defendant] showed no cause for not raising the issue earlier)" is not entitled to deference pursuant to § 2254(d)(1)).

court's determination was not contrary to or an unreasonable application of clearly established federal law and that the decision was not based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. §§ 2254(d)(1) and (2). In this case, these claims are Petitioner's claim of ineffective assistance of counsel, the federal claims rejected on the merits by the Georgia Supreme Court on the direct appeal (and which Judge Towson dismissed under *Elrod* ), the claims that Georgia's death penalty statute is unconstitutional, that lethal injection constitutes cruel and unusual punishment, and that Georgia's death penalty statute violates the Equal Protection Clause.

Petitioner will have the opportunity to contend (and the State may respond) that the state courts' merit-based conclusions with respect to these federal claims were "contrary to, or involved an unreasonable application of, clearly established Federal law," or that the decision was "based on an unreasonable determination of the facts." 28 U.S.C. §§ 2254(d)(1) and (2).[35] This must be done on a claim-by-claim basis.

### 5. Unexhausted Claim

■ In paragraph sixty-six (66) of Petitioner's amended habeas corpus petition, he claims the prosecutor's statement during his closing argument was improper.[36] Respondent urges that this claim is unexhausted, and thus should be procedurally barred by this Court as the claim would be procedurally barred as successive pursuant to O.C.G.A. § 9–14–51 and *Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103

L.Ed.2d 308 (1989) ("[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."). Petitioner responds that the claim should not be defaulted because he asserted the same argument, although worded differently, in his second amended petition for writ of habeas corpus and Judge Towson dismissed it under *Elrod*.[37] Petitioner claims that both versions (the second state habeas petition and the present federal habeas petition) seek relief based on the prosecutor's use of the Bible to argue the death penalty was mandatory in Petitioner's case.[38] This Court agrees. The Georgia Supreme Court ruled on the merits of the claim, *Crowe*, 265 Ga. 582, 458 S.E.2d 799, 811 (1995), and Judge Towson dismissed it under *Elrod.* Therefore, this Court may review the merits of the claim. Petitioner may brief the merits of the claim under § 2254(d).

### 6. Failure to State a Claim

■ Respondent also urges that Petitioner's twenty-second (22) claim—the state habeas courts denied Crowe a full and fair hearing—fails to state a claim for which habeas relief can be granted. Respondent is correct that this is a non-cognizable claim. *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir.1987). In *Spradley*, the state trial court did not conduct an evidentiary hearing on petitioner's state habeas petition. The Eleventh Circuit held that the trial court's failure to hold a hearing did not in any way undermine "the

---

**35.** To the extent that any purely factual determinations are involved, § 2254(e) applies.

**36.** The prosecutor said, "the Bible says that you shall be put to death if you kill somebody, and when Jesus came along, He never changed that." Superior Court of Douglas County, Trial Transcript, Vol. VII, p. 1821.

**37.** This was the first petition for purposes of Georgia's successive petition doctrine. *See* n. 9, supra.

**38.** The petitions are identical except that the latter petition includes the claim that the prosecutor's statements were prejudicial and misleading, citing *Romine v. Head*, 253 F.3d 1349, 1368 (11th Cir.2001).

validity of Petitioner's conviction. Because [the claim] goes to issues unrelated to the cause of petitioner's detention, it does not state a basis for habeas relief." *Id.* at 1568.

■ The majority of circuit courts agree that the writ of habeas corpus is not the proper avenue to address the adequacy of state post-conviction proceedings. *See Morris v. Cain,* 186 F.3d 581, 585 n. 6 (5th Cir.1999); *Williams v. Mo.,* 640 F.2d 140, 143–44 (8th Cir.1981) ("Adequacy or availability of the state post-conviction procedures is [not a proper reason] to review alleged trial errors. . . . Habeas corpus in the federal courts does not serve as an additional appeal from state court convictions"); *Franzen v. Brinkman,* 877 F.2d 26, 26 (9th Cir.), *cert. denied sub nom., Franzen v. Deeds,* 493 U.S. 1012, 110 S.Ct. 574, 107 L.Ed.2d 569 (1989); *Hopkinson v. Shillinger,* 866 F.2d 1185, 1219–20 (10th Cir.1989), *cert. denied,* 497 U.S. 1010, 110 S.Ct. 3256, 111 L.Ed.2d 765 (1990); *Bryant v. Md.,* 848 F.2d 492, 493 (4th Cir.1988); *Kirby v. Dutton,* 794 F.2d 245, 247–48 (6th Cir.1986); *Abu Jamal v. Horn,* 2001 WL 1609690 (E.D.Pa.2001). Therefore, claim twenty-two (22) of Petitioner's amended federal habeas petition does not state a claim for which relief can be granted and is dismissed.

### 7. Evidentiary Hearing

Crowe has requested an evidentiary hearing in this Court. Respondent claims the hearing is neither necessary nor proper under § 2254(e)(2). In light of the restrictions in § 2254(e)(2) and the extensive hearings afforded Crowe, specifically the state evidentiary hearings, this Court is disinclined to have an evidentiary hearing. Crowe may request a hearing in his upcoming brief, but he must explain, on a claim-by-claim basis, why the hearing is necessary and appropriate. If Petitioner desires to assert new evidence, i.e. evidence no state court has considered, he must state expressly, and with a high level of *specificity,* what the evidence is, including the names of any witnesses on a claim-by-claim basis and exactly what they would say. Conclusory assertions will be insufficient. Petitioner must also show that consideration of the new evidence is appropriate under 28 U.S.C. § 2254(e)(2),[39] which requires a showing that Petitioner was not at fault in failing to develop the evidence in state court, *Holland v. Jackson,* —— U.S. ——, 124 S.Ct. 2736, 2738, 159 L.Ed.2d 683 (2004). *See also Keeney v. Tamayo Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). Petitioner may not assert attorney negligence as the cause for not obtaining the evidence unless he satisfies the constitutional standard of *Strickland v. Washington. Id.*

### III. Conclusion

The Court hereby directs Petitioner to submit further briefing, and Respondent to respond, on the following issues only on a claim-by-claim basis:

1. Whether the Georgia courts' determination of those federal claims decided on the merits was contrary to or an unreasonable application of federal

---

**39.** 28 U.S.C. § 2254(e)(2) provides, "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that (A) the claim relies on . . . (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." Therefore, a distinction between the evidence the state court has, and has not, reviewed is essential to a review of its findings based on federal law.

law or that the factual determinations were unreasonable; [40]

2. Whether "cause" and "prejudice" exist as to the procedurally defaulted claims or that a "miscarriage of justice" would result if the claims were not heard in this Court; [41] and

3. Whether Petitioner is entitled to a federal evidentiary hearing.

Petitioner shall submit his brief within sixty (60) days of the date of entry of this order. Respondent shall have sixty (60) days to respond. Petitioner will then have thirty (30) days to reply. Both sides are cautioned that no extensions will be granted. The Clerk is directed to resubmit the case to the Court on June 21, 2005, or upon the filing of Petitioner's reply brief, whichever first occurs.

---

**40.** Includes Petitioner's claims of ineffective assistance of counsel, the federal claims decided on the merits by the Georgia Supreme Court and which Judge Towson dismissed pursuant to *Elrod,* and the claims that Georgia's death penalty statute is unconstitutional, that lethal injection constitutes cruel and unusual punishment, and that Georgia's death penalty statute violates the Equal Protection Clause.

**41.** *See* n. 19 and 20, supra.